Joseph, who is convicted for his alleged role in aiding and abetting four bank robberies. At the outset, I would like to reserve five minutes of my time for rebuttal. I have been sentenced to two years in prison, the first where there was sufficient evidence in the record to support the government's second aiding and abetting conviction for the gun used in the second bank robbery, and two years in prison to whether Scott's confession post-trial that my client is innocent of all charges entitles my client to a new trial. First, the aiding and abetting. As this Court knows, to convict someone of aiding and abetting the use of a gun in a bank robbery, it's not sufficient that the government release evidence that the defendant supported the bank robbery. Instead, the government has to prove that the defendant aided and abetted specifically the use of the gun. Here, the only evidence about the guns are the two proper structures in the bank robbery, Scott and Bates. When Scott was asked about the gun in the second bank robbery, all he could say is, I don't know where we got the guns. He says nothing else. When Bates was asked about the guns in the second bank robbery, all he can say is, I think they were in the Camry, a car used, a car owned by my client. When the government asks for clarification in the Camry this time, Bates responds, I think so. He can offer nothing else. This stands in stark contrast to both their testimony in all the other bank robberies where they unambiguously said, my client was heavily involved. In the first bank robbery, when both bank robbers were asked about the guns, both stated Joseph gave them the guns, but they weren't able to do that in the second bank robbery. Secondly, even if Bates has testified that he thinks the guns were in the Camry, even if we can credit that actually the guns were, in fact, in the Camry, that still isn't sufficient. He never says that one of them is in the Camry. In fact, in the third bank robbery, he gave similar testimony. He said that he unequivocally stated in that bank robbery that, in fact, Joseph was unequivocally in that bank robbery that the guns were in the Camry. But when the government called up and asked more questions, he said he didn't actually know how he was going to get to the point that he couldn't say that Joseph actually put them there. In fact, in the first bank robbery, the bank robbers, Bates and Scott, both otherwise had access to guns. They both had otherwise been convicted of armed bank robbery. Finally, in Scott's confession, he now states that actually Bates gave them the guns in all the bank robberies, and it wasn't my client. Ginsburg. So the question, it seems to me, comes down to the word facilitated and whether the fact that the Camry was registered to Mr. Joseph and one other person and this equivocal statement, I think the guns were in the Camry, whether that's enough to meet facilitated. And would you address that, please? Absolutely, Your Honor. Perceiving that the car was titled in my client's mother-in-law's, but that doesn't necessarily mean that my client put the guns in there. Both Bates and Scott put the guns in there. In fact, as I said earlier, in the third bank robbery, Bates can't even say that Joseph put the gun in the Camry, even though he said in that bank robbery that, in fact, the guns were in the Camry. And, too, I think the predicate issue here is whether or not, when Bates says, I think, if that entitled a jury to believe beyond a reasonable doubt that my client, in fact, put the guns in the Camry, let alone whether the guns were in the Camry, I'm not aware of any case where I think testimony is sufficient. So without that, the government tries to cite to evidence that my client took part in the bank robbery generally, and I can see that, in fact, there's sufficient evidence in the record to support the fact that my client was, in fact, involved in a bank robbery. But that's not the issue here. The issue here isn't whether he got money, et cetera. The issue here is what did he do? What act can the government point to that my client actually aid and abetted or supported, say, the government says that someone did, like, purchase the guns. And I respectfully submit that there simply isn't any evidence in the record to support that. Ginsburg. The case that was submitted by the government's 28J letter, the Hungerford case, I recognize that's a different statute that was being looked at on aiding and abetting, but I would appreciate if you could comment on how you think that fits into the analysis. Sure. I think Hungerford was an inference case, an inference case driven by specific facts. In Hungerford, you had a bank robber who was involved in a long string of bank robberies who has been charged with conspiracy and was convicted of conspiracy. All the bank robberies were linked. Here, this isn't a conspiracy case. These bank robberies aren't similar. They're not part of a conspiracy. There's no support for the idea that my client's role in these bank robberies was somehow aiding and abetting the use of the gun. In the first bank robbery, he was, in fact, convicted. The second bank robbery is the one we're discussing here. But in the third and fourth bank robberies, my client was convicted of aiding and abetting the use of the gun, and I think that's important. The jury itself didn't determine that my client's role was to somehow provide the use of the guns. That's something Hungerford is distinguishable in the fact that in that case, there is no discussion of the facilitation or encouragement, which, of course, is evident in this case. And do we have a case that also says something to the effect that you can't use similar robberies or similar incidents to infer the actual participation or aiding and abetting that would be required under a statute like this? Well, I think that case, Your Honors, U.S. v. Nelson, where we had a series of entire we had two bank robberies a month apart, which is similar situation to the first and second bank robbery here. And you had four or five defendants all appealing their convictions of the 924C, and they were all upheld except for one individual who initially in the first bank robbery the Court held there was sufficient evidence that she, in fact, had taken certain acts at the scene of the crime that facilitated the use of the gun. In the second bank robbery, the Court looked at what she had done in that bank robbery and decided there wasn't sufficient evidence. The government didn't allow the jury to infer the fact that this woman had taken certain acts at the scene of the first bank robbery. Therefore, she must have done it again. That must have been her role in the bank robbery. Therefore, we allow the jury to make that inference. Secondly, unless there's further questions about that issue, I'd like to discuss the motion for a new trial. Mr. Joseph, this Court needs to admit that this Court has reduced discretion by holding that Scott's recantation would not likely result in an acquittal. I think the government makes a critique of the session that is free, and that is essentially that this case comes down to the interlocking testimony of Scott, Bates, and Swift. While there was some other evidence in the record about my clients, there is no other direct evidence about his role in the bank robberies except for those three individuals. Without Scott's testimony, the jury would have to weigh the credibility of Scott against the testimony of Swift and Bates. And the first and second bank robberies where Scott testified, the government was able to secure all of his convictions. In the third and fourth bank robbery, where Scott didn't testify, the government's case, at least with respect to the guns, fell apart. It could only get the bank robbery charge upheld. I think this is striking because in the third bank robbery, under Bates' view of the world, my client not only aided and abetted the use of the guns, he actually went into the bank with Bates. So the jury didn't believe that. Pretty clear, isn't it, that the district court didn't put much store in Scott's credibility, right, on the motion for a new trial? That's true, Your Honor. He's he'd the district court did believe that Scott was not credible in the trial, but I respectfully submit that the jury's verdict and the government's brief say otherwise. I think another important point here is the government's closing argument, where they pointed to Scott's demeanor at trial as evidence of the fact that he actually was fighting the government, so therefore he must be more believable. And I think that the district court then turned around and used that same fact to argue that Scott wasn't credible. The second I think important point here is that the district court never found that Scott's confession wasn't credible. The district court only said it believed the jury thought Scott's trial testimony was credible. There is no credibility finding on the actual confession. The only issue before this Court essentially is whether or not the district court abused discretion by holding that Scott's recantation would not likely result in a trial. I'm sorry, result in acquittal. And I believe once we look at the jury's verdict, and I believe once we look at the government's concession, that a key part of its case was the fact that there is this interlocking testimony of these three felons, that in a new trial, a new jury weighing this, particularly in light of the fact that we already know at the very least the first jury did not believe Bates, that in a new trial, a jury would likely acquit. I think this is particularly true with respect to the guns, where at the very least we have very little evidence in the second bank robbery about any kind of use of the guns. In fact, I don't think there's sufficient evidence to hold a conviction. But at the very least, in a new trial, you'd have to weigh Scott's, I think, testimony. I think they might be in this car with Scott's now confession, which is that Bates actually supplied the guns in all the cars, and my client had nothing to do with it. I think weighing that, I think with that, any jury would probably look at my client's very discreet testimony. I'm sorry, of the first two nine cases. Finally, in the government's brief, it makes a lot of the fact that Scott actually recanted twice. Initially, when he came forward, he didn't entirely say that Joseph was innocent. He still said my client had a small role in some of the bank robberies, although even in his first recantation, he says that my client had nothing to do with the guns. And the government argues that the fact that Scott was initially hesitant to testify at trial because he was afraid for his family's safety means that Scott must have recanted because he was afraid, which is why initially he didn't come forward all the way, and therefore his recantation is not credible. First, as I stated earlier, even in Scott's initial recantation, he still vindicates my client's argument that he had absolutely nothing to do with the guns in the bank robbery, and also still says that my client had nothing to do with the fourth bank robbery. But second, and perhaps more importantly, this wasn't a case where Scott ran to Joseph's defense counsel after trial and made this incredible confession. In fact, Joseph's trial counsel had to track him down, and after meeting with him through several sessions, Scott eventually confessed that actually Joseph had nothing to do with these cases. This also isn't a typical case where you have a co-defendant testify at trial, someone gets convicted, and then after trial, knowing he's already been sentenced, he's under no jeopardy other than perhaps a perjury charge, he recants. This is a case where Scott has testified under a plea agreement, and under a plea agreement, he has testified truthfully, or he could be charged for both the M-I and M-S-C robberies. The fact that Scott has now admitted he's been perjured means he's actually not only on the hook for a potential perjury charge, but also perhaps for his role in the admittable role of the M-I and M-S-C robberies. Unless the Court has any questions, I'd like to reserve the rest of my time. You may do that. We'll hear from the government. Thank you, Your Honor. May it please the Court. My name is Matt Lamberty, and I represent the government in this appeal. There are three issues before this Court. The first issue is, on a standard of plain error, construing all the facts and inferences below in the light of his favorable to the government, whether or not there is sufficient evidence, whether or not any rational jury would have convicted Earl Joseph on the robbery of an accounts for M-S-C. The second issue is whether or not the district court judge, Judge White, abused his discretion in admitting a statement that Joseph made to his then-girlfriend, Danesha Day, in which she instructed Day to lie to the police to cover up the fact that he had used her car in a number of robberies, including three or four car robberies. The third issue is whether or not the district court judge abused his discretion in declining to award Joseph a new trial based on a so-called recantation from a government witness that the judge thought was not credible on its face and which the judge found the jury almost certainly did not place any great reliance. Now, I'd like to start with this efficiency argument, and I want to turn to you, Your Honor, on the following point that you made with regard to the guns. The defense wants us to just look at one of the witnesses, Bates, and wants to look at one of the statements that Bates made at trial, the guns were in the Camry, and stop there. But that's not what the jury did, and that's not the job for this Court. This Court should look at the totality of the evidence and determine, based on the standard of review, whether or not any rational jury would have convicted Joseph of the robbery and gun counts for FSC. So let's look at some of the evidence. And again, this is both direct evidence and circumstantial evidence, and also inferences from that evidence. Well, one thing we know is that there was a gun dealer, Antonio Servideo, that sold Earl Joseph five guns for the robbery, including a Tech-9. There was evidence that the Tech-9 was used in the Alliance robbery. There is evidence that the Tech-9 and another semiautomatic gun were given to Scott and Bates for use in the Alliance robbery. There is no evidence that Scott or Bates had access to any guns. There's no evidence that they had access to any cars. The only evidence. Ginsburg – Could I just stop you there? Because that – it seems to me it'd be an important point in this case as to whether you can make inferences from the Alliance robbery with respect to whether in this case, in the FSC robbery, there actually was an actual facilitation. And Nelson seems to suggest you can't really do that. I mean, you could use one robbery to show M.O. and that he participated, but that there might be – there's a kind of a different standard for aiding and abetting. And so would you address that point? Certainly, Your Honor. With respect to the Nelson case, in the Nelson case there were a number of 924C counts involving multiple defendants. This Court affirmed every single 924 conviction except for one of the two convictions for one of the defendants, Edwards. The evidence in the record in that case was that Edwards had participated in the planning for both robberies. And with regard to the first robbery, the evidence was that she was at the scene of the crime, and she helped instruct some of the victims to get down. She said, get down, while one of the other robbers held a gun. Now, this Court affirmed her conviction just based on that evidence, planning and her aiding and an instruction to some of the victims in the bank. That's far less evidence than we have in this case. There's evidence here that Earl Joseph provided guns, he provided cars, he drove the robbers to the bank. He dropped them off in front of the bank literally minutes before the robbery, knowing that there was going to be a robbery. But, see, all of that whole statement says, yes, there's going to be a robbery and he's into it knee-deep, but it doesn't really address the gun issue. The gun issue, I think the alliance robbery is important here because of the signature quality of that robbery. I mean, imagine a robbery, imagine the alliance robbery occurred as it did, as we set forth in the brief. Imagine there was a second robbery at FSC involving Joseph, X and Y, and two shot-off shotguns. If the government came before this Court and said, well, this Court should infer that Joseph provided those shot-off shotguns for the second robbery, I don't think that would be a permissible inference. I think that would be something that would be a speculation. But here, look at the alliance robbery. There is a very unique signature to the robbery. Joseph picks up the other two, he drives them to Denise's apartment complex, they sleep in a carport. Joseph gets the Acura from his girlfriend. They drive over to Marguerite de Leon's workplace. She is Joseph's de facto mother-in-law. She's known him for 12 or 13 years, and that's where the car is parked. And the car is registered in his name. He picks up the car. That car and the Acura are used in the robbery. The evidence is that the guns were in the Camry, excuse me, right before the robbery. For instance, Bates testified that literally minutes before the robbery, Scott and Bates put on their disguises, they took their guns, and they ran into the bank. There's evidence from the tellers in the bank that the first thing that the teller saw when the main robbers came in was guns on stretch. One of the tellers said she heard a loud bang, robbers came in, they jumped on the counter, and she saw them holding a gun. Right. So I think that jury would have inferred that Joseph knew about the guns, that he facilitated the guns. In the FSC robbery? In the FSC robbery. I guess maybe I'm – I don't mean to be dense, but I'm – Okay. I thought you were just telling me how the Alliance robbery was such a hallmark robbery, and then you said, and so therefore we can – Right. Right. That signature quality of the robbery was replicated in FSC. They went – in FSC, they went to Denise O'Day's apartment complex, they slept under the carport. Joseph got the Acura, just like Alliance. They then went to D. Leon's workplace and got the Camry, just like Alliance. Here's my question there, though, is really can you use – you can use that generally, it seems to me, to show participation in convicting somebody, and I have – that seems like a – not a very novel proposition. But if you look at the statute itself, what you have to prove beyond a reasonable doubt is the defendant directly facilitated or encouraged. So I'm not quite sure how participation in one robbery, even if it was a signature robbery and then you had similarities in a second robbery, would really meet that. Well, one thing the Court should look at is the fact that Joseph provided the cars for the robbery, and evidence is unquestionable that the guns were in the Camry. Also, it's important that when the guns were in the Camry right before the robbery, Joseph knew that they were going to rob the bank. Now, one thing I think that most is used is that the guns are in the Camry with all three of the robbers, and Joseph was driving the Camry. So I think right on that fact, you have facilitation. And I would point the Court to the First Circuit's case in Bennett. And in Bennett, the evidence was – this is a bank robbery case. In Bennett, the evidence was that the robbers drove to the bank. One of the robbers drove the car. There were guns in the car. The other robbers robbed the bank. And that was sufficient evidence for the First Circuit to affirm the conviction. Why? Because the defendant in that case facilitated the use of the guns by driving the guns to the robbery so they could be used in that robbery. And it's important. I think it's crucial for this Court to say that. In that case, what was the evidence of the knowledge that the guns were in the car? The evidence was that – the evidence of knowledge was implicit, given the fact that everyone was involved in the robbery, all three of them were in the car, the robbers had the guns in the car, and ran into the bank with the guns. So that was a facilitation. And I think it's crucial for the Court to see that there's no evidence that the other robbers had any vehicles. There's no evidence that they had any guns. How were Scott and Bates going to rob the bank on a bicycle? No, they had to get to the bank. And how were they going to do it? They needed guns to conduct the robbery. So the evidence in this record is that Joseph was a behind-the-scenes guy. He's the guy that put everything into motion. He provided the cars. He provided the guns. He provided the disguises. He provided the rides to the bank. And so I think it's important that we look at the totality of the evidence, as this jury did, in considering the sufficiency of evidence. Do you have a case that would be useful in answering the question as to what inferences can properly be drawn from the alliance for another similar robbery when you're Well, I think one thing the Court can do is look at this Court's opinions with regard to knowledge and intent. So, for instance, if someone is charged in a multi-count indictment and they defend that trial by saying that they didn't have knowledge or intent, I think that this Court has held that the jury can infer from someone's participation in an earlier robbery or even later robbery that they had intent or knowledge. And I think that the Court has used the word facilitate, but in fact, as the Court knows, it's encourage or facilitate. So if there's encouragement, that could be enough for aiding and abetting. Well, what that seems to me to be further afield than facilitate in this case. I don't know. Maybe I'm off on that, but I read the words and I think if there's an issue, if his conviction were to be sustained, it would be under facilitation, not encourage. But now you're saying encourage. What would be the evidence of encourage? Well, I do think there's strong evidence for facilitation. With regard to encourage, I think that can be in the alliance for robbery. Now, Joseph's defense at trial was that the bank robberies occurred, that the armed bank robberies occurred, and we just heard appellate counsel concede that he was involved in all of the robberies. So, but at trial, he did dispute his intent, he did dispute his knowledge, he did dispute his participation. And so I think that the encouragement issue is like intent or knowledge. And so I think that the Court, and in fact, this jury, should actually look at that sort of totality of evidence in terms of deciding whether or not there is encouragement. And again, the standard of review here is to look at all of the evidence in the light most favorable to the government, to look at the issue involving the Camry, to look at the issue involving the guns, to look at the issue involving the cars in the light most favorable to the government. And again, it is a plainer standard of review. So I think that the Hungerford opinion is important. And as the Court noted, that was a HOMS Act case, but there were four 924C counts. And what was the evidence that this Court looked at just last month in affirming four 924C counts? The evidence was that Marion Hungerford had cased several banks that her co-defendant had been in. Kagan. Kagan. And I ask you, in that case, was the appeal on the sufficiency of the evidence of the 924C, or was it on the constitutionality? There was an appeal. Marion Hungerford was convicted of a number of counts. On appeal, there was a challenge to a conspiracy count, four 924C counts, and four HOVS Act counts. This Court affirmed on a Pinkerton theory and alternatively on an abetting theory. So this Court just a month ago affirmed the 924C counts for sufficiency of evidence based on an abetting theory. And there were four pieces of evidence that allowed the Court to make that holding. The first was that she knew about the robberies, that she cased the robberies, that she participated in the planning of the robberies, and she shared the proceeds. That is much skimpier evidence than we have in our case. And I think that if the Court is to look at the Hungerford opinion, I think that that suggests in a multi-count indictment where there are multiple robberies, the Court can look at all the different robberies as far as the totality of evidence in determining aiding and abetting, in determining encouragement, in determining facilitation. So I think that is an important case for this Court to look at in terms of your question, Judge McKeown. It appears there's no further questions. I can briefly address the other two issues, if the Court would like. Your choice. I'll just briefly – I notice that counsel did not address the issue of whether or not the guns are real or the issue involving Tanisha Day's statement. So let me briefly respond to the issue involving the so-called recantation. Again, the standard of review here is an abuse of discretion standard. And there's a five-factor test that has addressed a couple of factors. One of the factors is if there was a new trial, whether or not the recantation would probably lead to an acquittal. And I think Judge White's finding is important here. And, Judge Toshima, you mentioned the finding. I think it's important. Judge White presided over the trial. He saw Scott testify, heard Scott testify, tell you the witnesses testify, and he didn't believe the recantation. He said – he's citing the Reyes-Alvarez-Alvarado opinion. He said it was untrustworthy and it should be discouraged. Not only that, but he said that because of all the baggage that Scott had, because the jury heard that Scott lied to law enforcement, because they heard that he had been arrested for perjury, because they heard that he had received a higher sentence because he failed a polygraph, that there was so much baggage that Scott simply wasn't credible to the jury. And not only that, but he said that he didn't think that the jury placed much reliance upon Scott's testimony. And again, two years after the trial, an investigator working for Earl Joseph interviewed Scott. And what did Scott say? He partially recants some of his trial testimony, but he still implicates Joseph in all the robberies. Then a month after that, he recants his recantation. This is a guy with no credibility whatsoever. In his recantation – of his recantation, he says, So I don't think that this is an end to any credibility. Now, in terms of Elmer Scott's testimony, his testimony was simply cumulative to the other witnesses. If you – the Court looks at the transcript, there's nothing that Scott says that the other witnesses don't say. And, in fact, what Scott says is corroborated by other evidence in the case, documentary evidence, eyewitness testimony from the tellers and other eyewitnesses. So he really didn't add anything to the case. And I think that was a factor in Judge White's finding. Now, I'm going to add that the issue is, if there was a second trial and Scott testified, what kind of witness would he be? Would he – would it result – probably result in an acquittal? Well, this is a guy with a history of lying, a history of perjury. Judge White said that he wasn't credible at the first trial. Imagine if he testified at the second trial. Would he be credible? Would he be more credible or less credible? I mean, obviously, he would be less credible. And so I think that there's no way that Joseph can meet that most important factor for newly discovered evidence. Now, with regard to the so-called recantation, one issue is whether or not this material were merely accumulative or impeaching. And I think, again, Judge White's finding is important here because Judge White certainly didn't believe in the recantation. And I think there was ample evidence for that, including the two motions for a new trial which contradicted each other. In addition, it's important to – for this Court to realize that eight days into the trial and the day before Scott was supposed to testify, he refused to testify. He said that he had been attacked three times in jail because he was going to testify for Joseph. So there's evidence in the record that he was scared to testify, that he had been attacked because he was going to testify. And the Second Circuit has said that that kind of fear is a relevant factor that a court of appeals can look at in affirming a decision by a district court judge to decline to order a new trial for newly discovered evidence. The other issue is whether or not the evidence is newly discovered at all, and we brief that in our – in our brief. So if there are no further questions with regard to that point, we would respectfully ask that the convictions be affirmed. Thank you. Do you have some time for rebuttal? Regarding the Aiding and Abetting Act, I concede there are certain similarities between the first and second bank robberies, but that isn't the issue here. The issue here is whether or not the evidence about the guns is the same. The first bank robbery, the Alignment Bank robbery, Bates and Scott were both able to say Joseph gave us the guns. This stands in stark contrast to what they said in the second bank robbery, which is that neither one of them could say that. And I think this completely destroys the government's inference case it's attempting to build. If there actually was some sort of gun supplying pattern by my client, the witnesses who were there, Scott and Bates, would have said so, but they never did. They can't – they can't say that that was my client's role. Secondly, as far as my client facilitating the use of the gun by driving to the bank robbery, first, that line of cases is only applicable once the government proves that my client had actual knowledge that guns were going to be used. Here, there is no knowledge at all. All there is, is there's testimony that my client drove two people to a bank that they knew they were going to be robbed, but absolutely no discussion at all about whether or not guns were going to be used. Secondly, here, as the Ninth Circuit has held, it's not enough simply to aid and abet the overall bank robbery, which essentially is what driving two people to a bank robbery is. Instead, you must facilitate specifically the use of the guns. And there simply isn't evidence here that that's the case. Third, the government would have and want this Court to say the jury could infer from the fact that there was testimony in the first bank robbery about guns that were actually bought and used in that bank robbery were somehow used in the second bank robbery. But there's absolutely no evidence at all the guns were used were the same. In fact, in the second bank robbery, we have a witness in the bank who was struck with one of the guns, thinking the gun, in fact, isn't even real. But there's zero evidence that the guns, in fact, were the same. In fact, Servideo, the gentleman who allegedly sold my client the guns used in the first bank robbery, never identified the guns used in the second bank robbery. Secondly, as far as Hungerford, it is true that Hungerford, there was – there were sufficiency challenges to the evidence, the 924C's in Hungerford. But as the government acknowledged, that ultimately was a conspiracy case. There was a series of bank robberies which actually were linked together. Here, there is no allegation that these bank robberies actually were some – part of some sort of scheme. They were entirely separate and distinct. Despite certain incidental similarities between the first and second bank robbery. As far as the motion for a new trial, the government stated several times that the district court found that Scott's recantation wasn't credible. But the court never said that. The court doesn't even comment in its order on whether or not it found Scott's recantation credible. Instead, all it talks about is whether or not it thought the jury thought Scott's trial testimony was credible. There's absolutely no credibility finding on his recantation. In all, it's true the court in the district court's order does talk about it out of the fact that courts are generally skeptical of recantation cases. The case that the district court cited dealt with when a co-defendant recants. And as I mentioned earlier, those cases present a special problem because, of course, at that point, the co-defendant is insulated from being recharged with the robberies, whereas here, Scott, in fact, is on the hook for the Alliance and FEC robberies since he's now admitted to committing perjury. The government also makes a lot of the fact that Scott had baggage. He clearly did, but all the government's key witnesses in this case had serious baggage problems. Bates is admitted to committing 14 or 15 bank robberies. Swift has admitted to committing 5 or 6 bank robberies. Another one of the credible witnesses, which I think also goes to against the government's point that ultimately Scott's testimony was cumulative of their testimony. This is a type of case where ultimately this trial was about Scott, Bates, and Swift's credibility. In those cases, the testimony of one bank robber isn't cumulative of the other, and that's necessary to secure the government's conviction, which, in fact, is what the government made in its brief. Here, the important fact was the fact that you had these three bank robbers who all were able to testify at trial. This interlocking testimony that convicted my client in a new trial, that wouldn't be the case. Finally, the government says that the second recantation somehow recanted the first one, and that's not what happened. In the first recantation, it is true that the Scott, in fact, still said my client had a small role in the initial bank robberies, although, again, he was always consistent about the guns. And when he recants again, he doesn't take back anything he said, saying my client was innocent. He simply goes further and says that my client actually had absolutely nothing to do with the bank robberies. So he never takes back anything he said, anything he said to the bank robberies. It's particularly true, as I mentioned earlier, with respect to the guns, where he's always been consistent that my client had absolutely nothing to do with the guns. In fact, in these cases, Bates was the actual mastermind who provided the guns. Unless the Court has any other questions. I think not. Thank both counsel for your arguments this morning. The case of United States v. Joseph is submitted.
judges: Tashima, McKeown, Carter